JERRY R. DALMASO *v.* DEPARTMENT
OF MOTOR VEHICLES
(AC 16660)

O'Connell, C. J., and Schaller and Shea, Js.

Argued December 9, 1997—officially released March 3, 1998

*Mark M. Wrenn,* for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

SHEA, J. The plaintiff, Jerry R. Dalmaso, appeals from the judgment of the Superior Court affirming the order of the defendant department of motor vehicles that his license to operate a motor vehicle be suspended for six months as a result of his refusal to submit to a chemical test of his breath to determine the alcohol content of his blood, as provided by subsections (a) and (b) of General Statutes § 14-227b.[1] Before declining the test, the plaintiff requested permission to telephone his attorney, but the police insisted that he take the test before

[1] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight. . . ."

they would allow such a telephone call. The plaintiff's determination to consult his attorney before submitting to the test was treated by the police and also by the motor vehicle department hearing officer as a refusal of the test, thereby subjecting him to a license suspension pursuant to subsection (b). The sole issue presented by the appeal is whether the denial of the plaintiff's request to call his attorney before submitting to the test invalidates the conclusion of the hearing officer that the plaintiff had refused the test. The trial court concluded that it did not and dismissed the appeal. From that judgment the plaintiff appeals to this court. We affirm the judgment.

On December 22, 1995, at 6:03 p.m., the plaintiff stopped his vehicle in response to the emergency light signal of a police patrol vehicle. The police officer, who followed the plaintiff as he drove along several streets in Waterbury, observed the plaintiff's vehicle crossing the yellow line and stopping for no apparent reason. When the officer walked up to the plaintiff's vehicle and spoke to him, he noticed the odor of alcohol on the plaintiff's breath. The officer then administered a field test for sobriety, which the plaintiff failed. After a brief struggle with the plaintiff, the officer arrested him for operating a motor vehicle while under the influence of alcohol or drugs in violation of General Statutes § 14-227a (a)[2] and transported him to the Waterbury police station. There, the arresting officer requested the plaintiff to submit to a breath test to determine the alcohol content of his blood, advising him that a refusal to take the test would result in a suspension of his operator's license. The plaintiff responded that he wanted to speak to his attorney. At the motor vehicle department hearing, the officer testified that he knew

[2] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

the plaintiff wanted to speak to his attorney before taking the test. He conceded that after the plaintiff had been permitted to make a telephone call, the police did not again request that the plaintiff submit to the test.

The plaintiff claims that the decision of the motor vehicle department hearing officer to suspend his license for six months should be reversed because of the admitted failure of the Waterbury police department to comply with subsection (b) of § 14-227b providing that a person arrested for operating a motor vehicle while under the influence of intoxicating liquor must be "afforded a reasonable opportunity to telephone an attorney prior to the performance" of a blood, urine or breath test. As the plaintiff recognizes, however, previous decisions of our Supreme Court and this court have construed § 14-227b (f)[3] to restrict a license suspension hearing, as the statute expressly provides, to the determination of the following four issues: "(1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis . . . and (4) was such person operating the motor vehicle. . . ."

In *Buckley* v. *Muzio*, 200 Conn. 1, 6–8, 509 A.2d 489 (1986), our Supreme Court, relying on the provision of

[3] General Statutes § 14-227b (f) provides in pertinent part: "The [license suspension] hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was

§ 14-227b that a suspension hearing "shall be limited to a determination" of the four specified issues, held that, in such a proceeding, it was of no significance that the presumably intoxicated driver may not have understood the consequences of a refusal to submit to chemical testing after having been properly informed thereof by the arresting officer. The court again relied on that restriction in affirming a license suspension in *Volck* v. *Muzio*, 204 Conn. 507, 509–10, 529 A.2d 177 (1987), even though the police had not followed the procedures prescribed in subsections (b) and (c) of § 14-227b.[4] The court recognized the significant difference in consequences that may follow a criminal prosecution for violating the prohibition in § 14-227a (a) for operating a motor vehicle while under the influence of intoxicating liquor and the license suspension that may follow a refusal to submit to chemical testing for the purpose of determining blood alcohol content. "It is only by strictly following the statutory requirements that an operator's refusal of chemical testing can be used in a criminal prosecution against him for operating under the influence or with impaired ability. On the other hand, the restriction of a license suspension hearing to the four issues specified in subsection [f] of § 14-227b is indicative of the legislative view that the failure to comply precisely with the requirements of subsection (b) should not prevent suspension of the license of a person, arrested with probable cause for believing he was operating under the influence or with impaired ability as a result of intoxicating liquor, who has refused to submit to the prescribed tests." *Volck* v. *Muzio*, supra, 514.

---

ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . ."

[4] The deviation from subsection (b) of § 14-227b was the failure of the police to arrest the operator before offering him the chemical tests. The deviation from subsection (c) was the failure to have the report of the arresting officer concerning such refusal "endorsed by a third person who witnessed [the operator's] refusal."

This court also has adhered to the interpretation of subsection (f) of § 14-227b that confines a license suspension hearing to a determination of the four issues specified therein, despite deviations from the procedures that subsection (b) commands in making arrests for driving while under the influence of intoxicants. In both *Kramer* v. *DelPonte*, 26 Conn. App. 101, 101–102, 598 A.2d 670 (1991), and *Piorek* v. *DelPonte*, 28 Conn. App. 911, 911–12, 610 A.2d 201 (1992), we disregarded indications in each case that the police had not permitted the arrested drivers to telephone attorneys before requesting them to be tested, as subsection (b) provides. In those cases, we implicitly rejected the very claim raised by the plaintiff in this appeal: that the failure of the police to allow an opportunity to telephone an attorney prior to offering the chemical tests vitiates the conclusion of the hearing officer that the arrested drivers had refused those tests. Without legislative action to enlarge the scope of a license suspension hearing beyond the four issues specified in subsection (f), we have no reason to modify the well established view that noncompliance with subsection (b) is irrelevant in such a proceeding.

The judgment is affirmed.

In this opinion the other judges concurred.