******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ANGEL HUANG DO *v.* COMMISSIONER OF MOTOR VEHICLES
## (SC 19722)

Palmer, McDonald, Robinson, Mullins, Kahn and Vertefeuille, Js.*

*Syllabus*

The plaintiff, who had been arrested for operating a motor vehicle while under the influence of intoxicating liquor, appealed to the trial court from the decision of the defendant, the Commissioner of Motor Vehicles, who temporarily suspended her operator's license pursuant to statute (§ 14-227b). At the plaintiff's suspension hearing, the Department of Motor Vehicles offered into evidence an exhibit that consisted of a standard A-44 form and an investigation report that were prepared by B, the arresting officer, and the results of the plaintiff's breath analysis tests, which were administered shortly after the plaintiff's arrest. The plaintiff objected to the admission of the exhibit at the hearing on the ground that it was unreliable due to inconsistencies and errors in the A-44 form and the investigation report. The hearing officer admitted the exhibit into evidence, concluding that the inconsistencies and errors were merely scrivener's errors that went solely to the weight to be ascribed to the exhibit rather than to its admissibility. The plaintiff did not testify or otherwise present any evidence at the hearing, and the hearing officer ultimately relied on the exhibit in suspending the plaintiff's license. On appeal to the trial court from the hearing officer's decision, the plaintiff challenged the admission of the exhibit. The trial court rendered judgment dismissing the plaintiff's appeal in part, concluding that the hearing officer did not abuse his discretion in admitting the exhibit because it was sufficiently reliable. The trial court nevertheless remanded the case to the hearing officer to resolve a factual discrepancy concerning which motor vehicle the plaintiff was operating when she was arrested, as the A-44 form stated that she was driving an Audi whereas the investigation report stated that she was driving a Mercedes-Benz. The plaintiff appealed from the trial court's judgment to the Appellate Court, claiming, inter alia, that the trial court had incorrectly determined that the hearing officer did not abuse his discretion in admitting the exhibit. The Appellate Court concluded that the inconsistencies and errors in the exhibit rendered it so unreliable that its admission violated principles of fundamental fairness. The Appellate Court reversed the trial court's judgment and remanded the case with direction to sustain the plaintiff's administrative appeal, reasoning that there was no other evidence in the record to support the hearing officer's findings. On the granting of certification, the commissioner appealed to this court. *Held* that the plaintiff failed to demonstrate that the hearing officer had abused his discretion in admitting and relying on the exhibit in support of his findings, and, accordingly, the Appellate Court's judgment was reversed, and the case was remanded with direction to reverse the trial court's judgment insofar as that court remanded the case and to order the trial court to deny the plaintiff's administrative appeal: the exhibit otherwise conformed to the statutory requirements for its admission, as it was submitted to the Department of Motor Vehicles within three business days, was subscribed and sworn to by B, set forth the grounds for B's belief that there was probable cause to arrest the plaintiff, and stated whether the plaintiff submitted to a blood test; moreover, the fact that B may have sworn to the accuracy of conflicting information in the A-44 form and the investigation report went to the weight to be accorded the exhibit rather than to its admissibility, and, therefore, the hearing officer properly considered the exhibit in its entirety despite any errors or inconsistencies; furthermore, the investigation report alone provided support for the hearing officer's findings, the hearing officer reasonably could have concluded that the inconsistencies in the exhibit did not negate its overall reliability, and, because the information in the exhibit constituted substantial evidence supporting the hearing officer's findings, there was no need for a remand to the hearing officer to resolve the factual issue regarding the make of the vehicle that the plaintiff was

operating at the time of her arrest.

Argued December 20, 2017—officially released February 12, 2019

*Procedural History*

Appeal from the decision of the defendant suspending the plaintiff's motor vehicle operator's license, brought to the Superior Court in the judicial district of Ansonia-Milford and transferred to the judicial district of New Britain, where the case was tried to the court, *Schuman*, *J.*; judgment dismissing the appeal in part and remanding for the resolution of a disputed factual issue, and the plaintiff appealed to the Appellate Court, *Gruendel* and *Prescott*, *Js.*, with *Bear*, *J.*, dissenting, which reversed the trial court's judgment and remanded the case with direction to render judgment sustaining the plaintiff's appeal, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellant (defendant).

*Chet L. Jackson*, for the appellee (plaintiff).

*Opinion*

PALMER, J. Under General Statutes § 14-227b (c),[1] anytime someone is arrested for operating a motor vehicle while under the influence of drugs or intoxicating liquor and refuses to submit to or fails a blood, breath or urine test, the arresting officer must, among other things, prepare a report of the incident for the Department of Motor Vehicles (department), and, pursuant to § 14-227b-19 of the Regulations of Connecticut State Agencies,[2] that report is admissible at a hearing to suspend an operator's license conducted in accordance with § 14-227b (g),[3] as long as it conforms to the requirements of § 14-227b (c). The defendant, the Commissioner of Motor Vehicles (commissioner), suspended the operator's license of the plaintiff, Angel Huang Do, for ninety days following a hearing at which the hearing officer relied on such a report, which consisted of an A-44 form,[4] a four page police investigation report, and the results of the plaintiff's breath analysis tests. The plaintiff appealed to the Superior Court from the decision of the commissioner, claiming, inter alia, that this report, which had been admitted into evidence by the hearing officer as a single exhibit,[5] was unreliable, even though it complied with § 14-227b (c), due to certain inconsistencies and errors contained therein. The plaintiff asserted, therefore, that the hearing officer had abused his discretion by admitting the exhibit into evidence. The trial court rejected the plaintiff's claim but remanded the case to the hearing officer for an articulation of the type of vehicle the plaintiff was driving at the time of her arrest. The plaintiff appealed from the trial court's judgment to the Appellate Court which, in a two to one decision, reversed, concluding that the inconsistencies and errors in the exhibit rendered it so unreliable that its admission violated principles of fundamental fairness. See *Do* v. *Commissioner of Motor Vehicles*, 164 Conn. App. 616, 618–19, 138 A.3d 359 (2016). Because there was no other evidence in the record to support the hearing officer's findings, the Appellate Court sustained the plaintiff's appeal. Id., 619. We granted the commissioner's petition for certification to appeal, limited to the issue of whether the Appellate Court properly determined that principles of fundamental fairness required the preclusion of the exhibit as unreliable even though it complied with § 14-227b (c). See *Do* v. *Commissioner of Motor Vehicles*, 322 Conn. 901, 138 A.3d 931 (2016). Because we agree with the commissioner that the hearing officer did not abuse his discretion in admitting and relying on the exhibit, we reverse the judgment of the Appellate Court.[6]

The record reveals the following facts and procedural history. On April 24, 2014, at approximately midnight, desk personnel notified State Trooper Troy M. Biggs that a 911 caller had described a white Mercedes-Benz driving erratically on Route 63 near Round Hill Road

in the town of Bethany. Shortly thereafter, Biggs spotted the Mercedes-Benz traveling northbound on Route 63 and proceeded to follow it. After Biggs observed the vehicle swerving and crossing the center line, he activated his emergency lights and pulled the driver over. Biggs identified the plaintiff as the driver of the vehicle from her Connecticut motor vehicle operator's license. While questioning the plaintiff, Biggs detected a strong odor of alcohol on her breath and inside the car. The plaintiff also admitted to having consumed two alcoholic beverages prior to leaving her home.

On the basis of this information, Biggs asked the plaintiff to exit the vehicle and to perform three standardized field sobriety tests, all of which the plaintiff failed.[7] At 12:30 a.m., Biggs placed the plaintiff under arrest for operating a motor vehicle under the influence of intoxicating liquor or drugs and transported her to the Bethany state police barracks, where she was advised of her *Miranda*[8] rights. She then agreed to submit to two breath analysis tests, the results of which indicated a blood alcohol content of 0.1184 and 0.1186 percent, respectively. The plaintiff subsequently was formally charged with operating a motor vehicle under the influence of intoxicating liquor or drugs in violation of General Statutes (Supp. 2014) § 14-227a (a).[9]

On April 26, 2014, in accordance with § 14-227b (c), Biggs transmitted a copy of the exhibit, which, as we previously indicated, consisted of an A-44 form, a four page police investigation report, and the results of the plaintiff's breath analysis tests, to the department. Each page of the exhibit was subscribed and sworn to electronically by Biggs under penalty of false statement. Biggs' supervising officer, Ryan M. Hennessey, administered an oath to Biggs and signed the exhibit as well.

On May 14, 2014, the commissioner notified the plaintiff that her license was being suspended for a period of ninety days. See General Statutes § 14-227b (e) (1).[10] The plaintiff availed herself of her right to contest the suspension at a hearing before an administrative hearing officer designated by the commissioner. Under § 14-227b (g),[11] such hearings are strictly "limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person . . . submit to [a] test or analysis, commenced within two hours of the time of operation, [which] . . . indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle." If the hearing officer finds affirmatively on all four issues, the hearing officer must uphold the commissioner's suspension of the person's license. See General Statutes § 14-227b (h).

Prior to the hearing, the commissioner notified the

plaintiff that the exhibit would be offered in evidence pursuant to § 14-227b (c). At the hearing, the plaintiff objected to the admission of the exhibit on the ground that it was unreliable due to the following internal discrepancies: (1) the A-44 form states that, at the time of her arrest, the plaintiff was driving a 2007 Audi A4 with Massachusetts license plates whereas the investigation report states that the plaintiff was driving a 2006 Mercedes-Benz S28 with Connecticut license plates; (2) after Biggs had subscribed and sworn to the information contained in the A-44 form, Biggs' supervising officer, Hennessey, altered the first page of that form by crossing out "04/23/2014" as the date of the incident and writing in "04/24/14";[12] (3) Hennessy also crossed out the name "Helt, David" as a person who witnessed the plaintiff's refusal to perform a breath analysis test; and (4) page two of the investigation report, in the prearrest screening section, states that the plaintiff informed Biggs that she was wearing contact lenses whereas the summary of the plaintiff's horizontal gaze nystagmus test results in the same report states that the plaintiff performed that test "with and without her glasses on." On the basis of these alleged discrepancies, the plaintiff argued that the exhibit did not meet the admissibility requirements of § 14-227b (c) because it could not be determined from the exhibit which vehicle the plaintiff was driving on the night of the incident and because the exhibit was not properly subscribed and sworn to because of the alterations made by Hennessey. In response, the department argued that the discrepancies identified by the plaintiff were mere scrivener's errors that went solely to the weight to be ascribed to the exhibit and not to its admissibility. The hearing officer agreed with the department and admitted the exhibit. The hearing officer advised the plaintiff, however, that he would take into account her arguments regarding the several errors and discrepancies in the exhibit in deciding whether the commissioner had satisfied each of the four requirements specified in § 14-227b (g) for suspending the plaintiff's operator's license. The plaintiff did not testify or otherwise present any evidence at the hearing.

On May 30, 2014, the hearing officer issued the following findings: (1) "The police officer had probable cause to arrest the [plaintiff] for a violation specified in [§] 14-227b of the . . . General Statutes"; (2) "[t]he [plaintiff] was placed under arrest"; (3) "[t]he [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of .08 [percent] or more"; and (4) "[the plaintiff] was operating the motor vehicle." Consistent with these findings, the commissioner ordered the suspension of the plaintiff's license for a period of ninety days.

The plaintiff thereafter filed a petition for reconsideration in which she argued that the hearing officer could not properly have found affirmatively on the fourth

issue—namely, that the plaintiff was operating the motor vehicle—because the exhibit indicated that the plaintiff was driving two different vehicles at the time of the incident. The plaintiff further argued that the A-44 form was inadmissible due to the alterations that Hennessey had made to it after Biggs had subscribed and sworn to the information contained therein. The commissioner denied the petition for reconsideration.

Pursuant to General Statutes § 4-183,[13] the plaintiff appealed from the commissioner's decision to the Superior Court, claiming that the hearing officer had abused his discretion in admitting the exhibit into evidence and that, even if the exhibit had been properly admitted, there was insufficient evidence to support the hearing officer's findings. The trial court rejected the plaintiff's claims, concluding that the exhibit was properly admitted because it complied with the requirements of § 14-227b (c) and, furthermore, that the contents of the exhibit supported the hearing officer's findings. Specifically, the trial court stated: "In this case, the A-44 [form] contains the April 26, 2014 electronic sworn signature under penalty of false statement of [Biggs] as the arresting officer. The signature box refers to the report itself and any attachments thereto. The attached investigation report contains the April 26, 2014 electronic sworn signature of [Biggs] as the investigator. These reports thus comply with the statute and provided sufficient reliability to justify their admission at the license suspension hearing in this case. See General Statutes § 14-227b (c) (the [c]ommissioner . . . may accept a police report under this subsection that is prepared and transmitted as an electronic record, including electronic signature or signatures).

"That reliability is not negated by the plaintiff's claims of discrepancies in the date of arrest and the identity of the motor vehicle that the plaintiff drove. The plaintiff raised both these claims before the hearing officer, thus giving the hearing officer an opportunity to consider them and exercise his discretion concerning the admissibility of the report.

"Under the applicable abuse of discretion standard, no abuse of discretion occurred here. . . . There is no dispute that the motor vehicle stop took place shortly after midnight on April 24, 2014. Page one of the A-44 [form] shows a typewritten but crossed out notation of the incident date as 04/23/2014. In handwriting, the date of 04/24/14 is added with initials that the commissioner concedes are those of . . . Hennessey, who . . . administered the oath but was not the sworn, arresting officer. The [exhibit], therefore, does contain this amount of unsworn information, which was improper. However, pages one and two of the A-44 [form] contain four references to the arrest and breath tests taking place in the early morning hours of 04/24/2014. The investigation report then makes six references to the

incident and investigation taking place on April 24. Under these circumstances, the hearing officer could reasonably have concluded that the initial notation of 04/23/2014 was a scrivener's error due to fact that the arrest took place shortly after midnight and that this error did not negate the overall reliability of the [exhibit].

"The same is true of the discrepancy with regard to the motor vehicle in question. Page one of the A-44 [form] lists the motor vehicle as a 2007 Audi with a Massachusetts registration. In the Property section of the investigation report, however, the motor vehicle is identified as a white 2006 Mercedes-Benz with Connecticut registration 344-ZBO. [Likewise] [t]he narrative [portion] of the [investigation] report states: A 911 caller described the vehicle as a white Mercedes-Benz bearing CT registration 344-ZBO. I observed this vehicle traveling northbound . . . . I activated my overhead emergency strobe lights, sirens and wig-wag headlights. The vehicle pulled over . . . . I never lost sight of the vehicle from my initial observation to the stop. Although the [exhibit] thus contain[s] conflicting evidence concerning the motor vehicle that the plaintiff operated, that conflict does not negate the overall reliability of the [exhibit], which otherwise meets the statutory and regulatory criteria. Rather, the conflict simply creates a fact or credibility issue for the hearing officer to resolve." (Citations omitted; internal quotation marks omitted.) Because the trial court also concluded, however, that the exhibit was ambiguous as to which vehicle the plaintiff was driving on the morning in question, the court remanded the case to the hearing officer for an articulation concerning that factual issue.

The plaintiff appealed to the Appellate Court, claiming, inter alia, that the trial court incorrectly had determined that the hearing officer did not abuse his discretion in admitting the exhibit into evidence. *Do* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 618. In support of this contention, the plaintiff argued, as she had before the trial court, that the discrepancies and errors contained in the exhibit rendered it unreliable and, therefore, inadmissible despite its compliance with § 14-227b (c). See id., 623. The plaintiff also argued, for the first time, that the exhibit likely contained information copied and pasted from the arrest report of another person. See id. The Appellate Court, with one judge dissenting, agreed with the plaintiff and sustained her appeal. See id., 634; see also id., 635 (*Bear, J.*, dissenting).

In reaching its determination, the Appellate Court acknowledged that, under § 14-227b-19 (a) of the Regulations of Connecticut State Agencies,[14] a police report that conforms to the requirements of § 14-227b (c) is deemed admissible at a license suspension hearing. Id., 624. The Appellate Court reasoned, however, that nei-

ther it nor this court "has ever held that technical compliance with [§ 14-227b] (c) must always result in the admission of an A-44 form. Although an A-44 form may technically comply with subsection (c), the information contained in the four corners of the document may still lead the hearing officer to conclude that the document is otherwise unreliable." Id., 626. "Because the reliability of the A-44 form is of the utmost importance, there may be instances in which an A-44 form contains so many significant internal discrepancies and errors that it is rendered unreliable, at least in the absence of testimony by the arresting officer or other evidence that supports its reliability." Id., 627. In the Appellate Court's view, Biggs' report was one such instance. Specifically, the court stated: "Portions of the exhibit in all likelihood pertain to the arrest of another individual, calling into question which portions of the exhibit actually pertain to the plaintiff. Furthermore, portions of the exhibit have been altered and initialed by an unknown person [namely, RH], and it is unclear whether this person had [personal] knowledge of the incident and swore under oath to the accuracy of the alterations. Additionally, there is no evidence as to when these alterations occurred." Id., 629–30.

"The extent of the errors and discrepancies far surpasses mere scrivener's errors. The exhibit does not merely state that the plaintiff operated two different vehicles—an Audi and a Mercedes–Benz—but it also lists different vehicle models, years, and state registrations. The statements that the plaintiff wore contact lenses and that the plaintiff participated in field sobriety tests with and without her glasses also cannot be dismissed as mere scrivener's errors. Additionally, the notation that 'Helt, David' witnessed the plaintiff's refusal to submit to chemical alcohol testing is not a scrivener's error because the department admits that the plaintiff consented to the Breathalyzer test. Although the incident date on the A-44 form may be a scrivener's error, the alteration by an unknown person undermines its reliability." Id., 630.

Judge Bear dissented from the majority opinion. In particular, he disagreed that the internal discrepancies identified by the plaintiff rendered the entire exhibit unreliable. See id., 637 (*Bear, J.*, dissenting). In his view, the significant number of factual commonalities between the A-44 form and the attached investigation report, combined with the large and undisputed portion of the exhibit that clearly described the plaintiff and her actions on the night in question, rendered the exhibit sufficiently reliable for use at the hearing. See id., 637, 642–44 (*Bear, J.*, dissenting). In reaching his determination, Judge Bear noted, among other things, "that both [the A-44 form and the investigation report] give the same or fundamentally similar information for the following items: the police case number; the location and time of the traffic stop; the race, sex, birthday, and

address of the plaintiff; that the plaintiff failed the same three field sobriety tests in virtually the same manner; that the plaintiff indicated that she had no physical injuries; and that [the plaintiff] was apprised of her *Miranda* rights at 12:43 a.m." (Footnotes omitted.) Id., 642–43 (*Bear, J.*, dissenting). Judge Bear noted that both documents also indicate that "the plaintiff [does not have] diabetes [and was not] on medication; the number and type of drinks that the plaintiff consumed [prior to her arrest]; the [fact] that the plaintiff was afforded the opportunity to contact an attorney [at 12:44 a.m.]; and the date, time, and results of [her] breath analysis tests." (Footnote omitted.) Id., 644 (*Bear, J.*, dissenting).

Judge Bear disagreed with the trial court, however, that the case must be remanded to the hearing officer for an articulation of the type of vehicle the plaintiff was driving when she was stopped by Biggs. See id., 645 (*Bear, J.*, dissenting). According to Judge Bear, it was apparent from Biggs' investigation report "that the plaintiff was operating the 2006 Mercedes-Benz at the time of her arrest . . . and that the sole reference to the 2007 Audi [on the A-44 form] is in the nature of a scrivener's, typographical, or word processing error." Id. Judge Bear also noted that the plaintiff did not testify or make any claim to the hearing officer that the information contained in the investigation report was inaccurate, which, Judge Bear asserted, underscored the overall reliability of that report and the reasonableness of the hearing officer's reliance on it. See id., 646 (*Bear, J.*, dissenting).

On appeal, the commissioner urges us to conclude, consistent with the determinations of the trial court and Judge Bear, that the hearing officer did not abuse his discretion or otherwise act unreasonably, arbitrarily, or illegally by admitting the exhibit and then relying on it in determining whether the department had satisfied the requirements of § 14-227b (g). The plaintiff, in turn, argues that the Appellate Court correctly determined that the errors contained in the exhibit rendered it so unreliable as to be inadmissible. We agree with the commissioner.

We begin our analysis by setting forth the relevant standards of review and legal principles that guide our analysis. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act . . . General Statutes §§ 4-166 through 4-189 . . . and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn.

333, 343, 757 A.2d 561 (2000). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Intenal quotation marks omitted.) *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 40, 639 A.2d 1018 (1994). "The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 676–77, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).

We previously have stated that "administrative tribunals are not strictly bound by the rules of evidence and . . . may consider exhibits [that] would normally be incompetent in a judicial proceeding, [as] long as the evidence is reliable and probative." *Lawrence* v. *Kozlowski*, 171 Conn. 705, 710, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). It is axiomatic, moreover, that it is within the province of the administrative hearing officer to determine whether evidence is reliable; see *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 346; and, on appeal, the plaintiff bears the burden of proving "that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion . . . ." *Demma* v. *Commissioner of Motor Vehicles*, 165 Conn. 15, 16–17, 327 A.2d 569 (1973). "Neither this court nor the [Appellate Court] may retry the case or substitute its own judgment for that of the [hearing officer with respect to] the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 343.

Applying these principles to the present case, we agree with the commissioner that the plaintiff has failed to demonstrate that the hearing officer abused his discretion by admitting the exhibit into evidence and relying on it to support his findings under § 14-227b (g). As the Appellate Court acknowledged, § 14-227b-19 (a) of the Regulations of Connecticut State Agencies, which has "the force and effect of a statute"; *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 60, 557 A.2d 1249 (1989);

provides in clear and straightforward terms that a police officer's report concerning the arrest of a drunk driving suspect "*shall be admissible* into evidence at [a license suspension] hearing if it conforms to the requirements of subsection (c) of [§] 14-227b of the . . . General Statutes." (Emphasis added.) Subsection (c) of § 14-227b itself provides that the report, to be admissible, must be submitted to the department within three business days, be subscribed and sworn to by the arresting officer under penalty of false statement, set forth the grounds for the officer's belief that there was probable cause to arrest the driver, and state whether the driver refused to submit to or failed a blood, breath or urine test. We previously have stated that the admissibility requirements set forth in § 14-227b (c) "provide sufficient indicia of reliability so that the [police] report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer." *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987). It is undisputed that the exhibit in the present case meets these requirements: it was submitted to the department within three business days; it was subscribed and sworn to by the arresting officer; it set forth the grounds for the officer's belief that there was probable cause to arrest the plaintiff; and it stated whether the plaintiff submitted to a blood test.

Neither this court nor the Appellate Court has ever recognized any basis for excluding a police report from evidence at a license suspension hearing other than the failure to comply with § 14-227b (c). Indeed, we consistently have rejected claims that a report should be excluded for any other reason. See, e.g., *Schallenkamp* v. *DelPonte*, supra, 229 Conn. 43 (fact that officer was not certified to administer breath analysis test was inconsequential because certification is not required under § 14-227b); *Volck* v. *Muzio*, supra, 204 Conn. 512, 518 (arresting officer's failure to comply with statutory dictates of § 14-227b [b] provided insufficient ground for overturning commissioner's suspension of operator's license, but absence of endorsement of third person to plaintiff's refusal to submit to breath analysis test as required by § 14-227b [c] would be ground for exclusion of police report); *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 398, 786 A.2d 1279 (2001) (arresting officer's failure to check box in A-44 form indicating that plaintiff was operating vehicle on public road did not render police report inadmissible because "[t]he report to be completed by police officers in accordance with § 14-227b [c] does not require the police to check a box setting forth that the person arrested was operating on a public road"); *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 711–12, 692 A.2d 834 (1997) (" 'multiple' " violations of § 14-227b were not grounds for excluding police report from evidence).

We have rejected such claims because, as we explained in *Fishbein* v. *Kozlowski*, 252 Conn. 38, 743 A.2d 1110 (1999), "the restriction of a license suspension hearing to the four issues specified in [what is now § 14-227b (g)] is indicative of the legislative view that the failure to comply precisely with the . . . requirements of [§ 14-227b (b)] should not prevent suspension of the license of a person, arrested with probable cause for believing he was operating under the influence or with impaired ability as a result of intoxicating liquor, who has refused to submit to [or has failed] the prescribed [blood alcohol] tests . . . . While the legislature has attached certain consequences to departures from the procedures specified in § 14-227b (b) and has provided a substantial incentive for the police to comply with those procedures in the context of criminal proceedings . . . the legislature has manifested its intention that noncompliance with subsection (b), not involving one of the four issues to be determined pursuant to subsection [what is now § 14-227b (g)], does not preclude the suspension of the license of a driver when the four enumerated elements have been demonstrated." (Citations omitted; internal quotation marks omitted.) Id., 47–48; see also *Volck* v. *Muzio*, supra, 204 Conn. 512, 518 (because hearing is limited to four enumerated issues, multiple failures by arresting officer to comply with statutory dictates of § 14-227b did not constitute grounds for overturning commissioner's decision to suspend operator's license); *Fitzgerald* v. *Commissioner of Motor Vehicles*, 142 Conn. App. 361, 364–65, 65 A.3d 533 (2013) ("the failure of the police to comply with subsection [b] of § 14-227b, which provides the right to telephone an attorney before being subjected to a chemical test, is irrelevant in a license suspension hearing because the hearing specifically, by legislation, is limited to the four issues specified in § 14-227b [g]" [footnote omitted]); *Dalmaso* v. *Dept. of Motor Vehicles*, 47 Conn. App. 839, 844, 707 A.2d 1275 ("[w]ithout legislative action to enlarge the scope of a license suspension hearing beyond the four issues specified in subsection [g], we have no reason to modify the well established view that noncompliance with subsection [b] is irrelevant in such a proceeding"), appeal dismissed, 247 Conn. 273, 720 A.2d 885 (1998). The present case is no exception.

Contrary to the determination of the Appellate Court, therefore, the fact that Biggs may have sworn to the accuracy of conflicting information concerning the type of vehicle the plaintiff was driving, the date of the incident, or whether the plaintiff was wearing contact lenses when she performed the horizontal gaze nystagmus test goes to the weight to be accorded the exhibit by the hearing officer, not to its admissibility. See, e.g., *Schallenkamp* v. *DelPonte*, supra, 229 Conn. 41 (determination regarding reliability of evidence is strictly within province of administrative hearing officer, and

"the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence" [internal quotation marks omitted]); *Lawrence* v. *Kozlowski*, supra, 171 Conn. 708 ("The [hearing officer's] function is that of an administrative agency, although he acts in a quasi-judicial capacity. To render a decision, he must weigh evidence and reach conclusions." [Internal quotation marks omitted.]). Thus, the hearing officer properly considered the exhibit in its entirety, despite any errors or inconsistencies. Moreover, we see no persuasive reason why the hearing officer was precluded from relying on the exhibit even though it contained several mistakes and discrepancies.[15]

Indeed, as Judge Bear observed; see *Do* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 641 (*Bear, J.*, dissenting); the four page investigation report alone provides support for the hearing officer's findings that (1) the police had probable cause to arrest the plaintiff, (2) the plaintiff was in fact arrested, (3) the plaintiff submitted to a breath analysis test, which indicated an elevated blood alcohol content, and (4) the plaintiff was the person operating the vehicle. The investigation report states in relevant part: "On 04-24-14 at approximately 0018 [hours], I was informed . . . that there was a vehicle operating erratically traveling northbound on Route 63 in the area of Round Hill Road in Bethany. A 911 caller described the vehicle as a white Mercedes Benz bearing [Connecticut] registration 344-ZBO. I observed this vehicle traveling northbound, failing to maintain its proper lane, at the intersection of Route 63 and Munson, swerving over the solid double yellow line onto the southbound side of the roadway. I activated my overhead emergency strobe lights, sirens and wig-wag headlights. The vehicle pulled over onto the shoulder at the intersection of Route 63 and Litchfield Turnpike in Bethany. I never lost sight of the vehicle from my initial observation to the stop. [Another] [t]rooper . . . arrived on [the] scene to assist [me]. . . .

"Upon approaching the vehicle . . . I observed [an] Asian female seated in the operator's position with the vehicle engine at an idle. The operator, later identified by her [Connecticut] operator's license . . . as [the plaintiff] . . . was asked for her license, registration and proof of insurance. . . . I then asked the [plaintiff] where she was coming from to which she stated, 'Milford.' I asked the [plaintiff] where in Milford . . . she [was] coming from to which she stated '[m]y house.' I asked the [plaintiff] where she was going to which she [responded] that she was on her way to her boyfriend's house in Bethany. I then asked the [plaintiff] if she had consumed any alcoholic beverages to which she stated '[y]es.' She went on to explain that she had [consumed] a [v]odka and [t]onic and a glass of [s]angria. It should

be noted that I detected a strong odor of an alcoholic beverage emanating from the [plaintiff's] breath as well as the driver's side compartment of the vehicle. I observed that the [plaintiff's] eyes were bloodshot and [glassy]. The [plaintiff] appeared to have difficulty locating [her] . . . [v]ehicle registration and [i]nsurance [identification] card . . . .

"Based [on] the above stated facts and circumstances [the plaintiff] was asked to exit and step to the rear of her vehicle and asked to perform [s]tandardized [f]ield [s]obriety [t]ests. [The plaintiff] was then asked if she had any physical injuries and/or disabilities that would prevent her from performing the tests, to which she replied, '[n]o.' [The plaintiff then] stated she was wearing contact lenses . . . ."

The investigation report then details the plaintiff's substandard performance on the three field sobriety tests. It also describes her arrest and subsequent transport to the state police barracks, where she was administered her *Miranda* warnings and read the requisite implied consent advisory. The investigation report further provides that the plaintiff was allowed to call an attorney and that, after speaking with him, she submitted to two breath analysis tests, which indicated a blood alcohol content of 0.1184 and 0.1186, respectively. The investigation report also notes that "a [video] cassette tape of the [s]tandardized field [s]obriety [t]ests and the [plaintiff's] arrest was removed from the [video recorder] in [Biggs'] assigned vehicle and entered into evidence. . . . The video portion of the arrest [was] functioning throughout this investigation." Finally, the investigation report concludes by providing that the plaintiff was issued a summons to appear on May 8, 2014, at 9:30 a.m. in New Haven Superior Court, that she was released on a $500 nonsurety bond, that her operator's license was revoked in accordance with § 14-227b (c), and that she was picked up by a friend at 2 a.m. As Judge Bear also noted, the plaintiff did not dispute any of these facts at the administrative hearing; see *Do* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 636, 646 (*Bear, J.*, dissenting); even though she had every opportunity to do so, and there is nothing in the record before this court to suggest that she disputes those facts now.

As for the four discrepancies in the exhibit, we agree with the trial court and Judge Bear that the hearing officer reasonably could have concluded that they did not negate the overall reliability of the exhibit as a whole. See id., 641 (*Bear, J.*, dissenting). Indeed, one of them—that the plaintiff performed the horizontal gaze nystagmus test with and without her glasses on even though she told Biggs prior to taking the test that she was wearing contact lenses—does not strike us as a discrepancy at all. The plaintiff could have told Biggs that she was wearing contacts but then removed them

to perform the test, believing she would do better on the test without them. In light of her level of intoxication, the plaintiff also could have simply forgotten that she was not wearing her contact lenses when she told Biggs differently, which Biggs then noted in his report.

The other three discrepancies on the A-44 form, an electronic document that contains a series of questions the arresting officer answers by filling in the blank next to the question, also do not warrant exclusion of the exhibit because none of them implicates the four findings prescribed by § 14-227b (g). See, e.g., *Fishbein* v. *Kozlowski*, supra, 252 Conn. 46 ("[w]e . . . have held repeatedly that the plain language of [what is now § 14-227b (g)] expressly and narrowly limits the scope of the license suspension hearing to the four issues enumerated in the statute"); *Volck* v. *Muzio*, supra, 204 Conn. 520 ("With respect to a license suspension hearing . . . whether an operator was warned of the consequences of refusing to submit to chemical tests is not made one of the issues to be adjudicated pursuant to [what is now § 14-227b (g)]. Although one of the four issues to be determined is whether a driver has refused to submit to chemical testing, his knowledge of the consequences is not an essential factor in deciding whether such a refusal has occurred."); *Buckley* v. *Muzio*, 200 Conn. 1, 7, 509 A.2d 489 (1986) (sole issue was whether hearing officer properly applied what is now § 14-227b [g] to facts of case, and "[h]aving nothing more to determine, it was inappropriate for [the reviewing court] to indulge in a microscopic search for technical infirmities in the [commissioner's] action" [internal quotation marks omitted]). It bears emphasis, moreover, as Judge Bear noted; see *Do* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 642–44 (*Bear, J.*, dissenting); that the vast majority of the information contained in the A-44 form—roughly 90 percent of Biggs' responses—mirrors precisely the information contained in the investigation report. Indeed, two of the discrepancies are actually corrections. As we previously indicated, after administering the oath to Biggs, Hennessey crossed out "04/23/2014" as the date of the incident and wrote in "04/24/14." He also crossed out "Helt, David" as the name of a person who witnessed the plaintiff's refusal to submit to a breath analysis test. We agree with Judge Bear that the hearing officer reasonably could have concluded that the original notations of "04/23/2014" and "Helt, David" were errors that Hennessey detected and corrected prior to transmitting the report to the department. See *Do* v. *Commissioner of Motor Vehicles*, supra, 644 and n.10 (*Bear, J.*, dissenting). Such a conclusion is warranted because it is undisputed that the plaintiff submitted to two breath analysis tests, the results of which were entered into evidence at the hearing. It is also undisputed that the incident occurred shortly after midnight on April 24, 2014, not on April 23, 2014. Indeed, as the trial court

noted, the correct date of April 24, 2014, is mentioned ten different times in the exhibit—four times in the A-44 form and six times in the investigation report.

As for the single reference to a 2007 Audi, we also agree with Judge Bear that the hearing officer reasonably could have concluded that the plaintiff was driving the white Mercedes-Benz based on the narrative set forth in the investigation report, which indicates that both Biggs and the 911 caller observed a white Mercedes-Benz driving erratically on Route 63 and that Biggs, upon approaching this vehicle, identified the plaintiff as the driver on the basis of her Connecticut operator's license. See id., 645–46 (*Bear, J.*, dissenting). It does appear to us, however, as the Appellate Court itself surmised, that Biggs inadvertently transcribed information from another person's arrest report when completing the plaintiff's A-44 form and that, although Hennessey caught two of the mistakes resulting therefrom before the three submissions were transmitted to the department, one was not so identified. See id., 622–23, 629–30. That would explain why "04/23/2014" and the name "Helt, David" are crossed out whereas the reference to the 2007 Audi is not.

As the commissioner argues, however, § 14-227b (g) requires only a showing that the arresting officer had probable cause to arrest the plaintiff for operating *a* motor vehicle; it does not expressly require information regarding the type of vehicle that was being driven. As we previously stated, under § 14-227b (g) (4), the hearing officer must determine whether the plaintiff was operating "the motor vehicle." In this subdivision, "the motor vehicle" refers to the vehicle referenced in subdivision (1) of § 14-227b (g), which asks whether the police officer had probable cause to arrest the plaintiff for operating "*a motor vehicle* while under the influence of intoxicating liquor . . . ." (Emphasis added.) As we explained, there is ample evidence in the record to support the hearing officer's finding that, on the night in question, the plaintiff was operating a motor vehicle while under the influence of intoxicating liquor. Indeed, the plaintiff has not challenged the hearing officer's finding that Biggs had probable cause to arrest her for that offense. An affirmative finding on the first statutory issue necessarily results in an affirmative finding on the fourth statutory issue.

We note, moreover, our disagreement with the Appellate Court that, "because the plaintiff objected to the admission of the exhibit and casted significant doubt [on] its reliability, the burden was on the department to offer additional evidence to prove the reliability of the exhibit," and that "[p]lacing this burden on the department is consistent with [this] [c]ourt's holding in *Carlson* v. *Kozlowski*, 172 Conn. 263, 267–68, 374 A.2d 207 (1977), that although hearsay evidence is generally admissible in administrative hearings, hearsay evidence

must be sufficiently reliable to be admissible." *Do.* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 628. In *Carlson,* the commissioner suspended the operator's license of the plaintiff, Alan J. Carlson, after a hearing officer determined, on the basis of four eyewitness affidavits, that Carlson had caused a fatal accident. *Carlson* v. *Kozlowski*, supra, 265. On appeal, Carlson claimed that the commissioner's decision was not supported by substantial evidence because the hearsay contained in the affidavits was unreliable. See id. As the Appellate Court explained in the present case, "[t]o determine whether hearsay evidence is sufficiently reliable in an administrative hearing, [this] court in *Carlson* adopted the test articulated in *Richardson* v. *Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). In *Richardson*, the United States Supreme Court was asked to decide whether medical records were sufficiently reliable to be admissible in an administrative hearing without the testimony of the medical examiner. Id., 402. In holding that the medical records were reliable, the court looked to multiple factors, including whether there were inconsistencies on the face of the records, and whether the plaintiff had the ability to subpoena the author of the records. Id., 403–406." *Do* v. *Commissioner of Motor* Vehicles, supra, 164 Conn. App. 628–29.

The Appellate Court's reliance on *Carlson* is misplaced for two reasons. First, as we previously stated, this court has already determined, in accordance with the legislative directive contained in § 14-227b (c), that the admissibility requirements set forth in that provision "provide sufficient indicia of reliability so that the [police] report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer." *Volck* v. *Muzio*, supra, 204 Conn. 518. Second, even if the *Richardson* factors *were* applicable, this court stated in *Carlson* that, "[i]f hearsay evidence is insufficiently trustworthy to be considered 'substantial evidence' and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, *absent a showing . . . that the appellant knew it would be used and failed to ask the commissioner to subpoena the declarants.*" (Emphasis added.) *Carlson* v. *Kozlowski*, supra, 172 Conn. 267. In the present case, it is undisputed that the plaintiff was informed prior to her hearing that the exhibit would be entered into evidence, but she failed to avail herself of her right to subpoena Biggs or any other witness to challenge the accuracy of the information contained in the exhibit. See Regs., Conn. State Agencies § 14-227b-18 (b) ("[a] person arrested for an enumerated offense may at such person's own expense and by such person's own solicitation summon to the [license suspension] hearing the arresting officer and any other witness to give oral

testimony"). Although it is true, as the Appellate Court noted; see *Do* v. *Commissioner of Motor Vehicles*, supra, 164 Conn. App. 626–27; that a witness' failure to respond to such a subpoena is not a ground for dismissal or a continuance of the hearing, there is nothing in the regulation to suggest that the hearing officer cannot, if warranted, consider the nonappearance of a subpoenaed witness in making his or her decision.

We note, finally, that this court "[has] indicated repeatedly that a license suspension hearing is not a criminal proceeding and that the subject of such a hearing is not entitled to all of the procedural protections that would be available in a criminal proceeding." *Fishbein* v. *Kozlowski*, supra, 252 Conn. 49. "In *State* v. *Hickam*, 235 Conn. 614, 624, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996), we [explained] that . . . the legislative history of § 14-227b reveals that a principal purpose [of] the enactment of the statute was to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process. This court in *Hickam* distinguished license suspension proceedings, the primary purpose of which is to promote public safety by removing those who have demonstrated a reckless disregard for the safety of others from the state's roadways, from criminal proceedings, the primary purpose of which is punishment." (Footnote omitted; internal quotation marks omitted.) *Fishbein* v. *Kozlowski*, supra, 48–49. Even in the context of a criminal proceeding, however, in which procedural safeguards are at their zenith, this court has recognized that, as a general matter, "the constitution's safeguard against convictions based on unreliable or questionable evidence is not the exclusion of such evidence but an opportunity for the defense to persuade the jury that such evidence is untrustworthy." *State* v. *Dickson*, 322 Conn. 410, 478, 141 A.3d 810 (2016) (*Zarella, J.*, concurring in the judgment), cert. denied, U.S. , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017). As Judge Bear aptly noted, the plaintiff in the present case had the opportunity at the license suspension hearing to present evidence to demonstrate the unreliability of the information contained in the exhibit but failed to do so. See *Do* v. *Commissioner of Motor Vehicles*, supra, 636, 646 (*Bear, J.*, dissenting).

We conclude, therefore, that the hearing officer properly admitted and relied on the hearsay information, sworn to by Biggs, that was submitted to the hearing officer by the commissioner. Because that information constituted substantial evidence to support the hearing officer's findings, there is no need for a remand of the case to the hearing officer, whose decision to reject the plaintiff's claim must stand.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

reverse the trial court's judgment insofar as that court remanded the case for further articulation and to order the trial court to deny the plaintiff's administrative appeal.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of date of oral argument.

[1] General Statutes § 14-227b (c) provides in relevant part: "If [a] person arrested [for operating a motor vehicle under the influence of intoxicating liquor or drugs] refuses to submit to [a blood, breath or urine] test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period. The police officer shall prepare a report of the incident and shall mail or otherwise transmit in accordance with this subsection the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall contain such information as prescribed by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for a violation of section 14-227a . . . and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content. The Commissioner of Motor Vehicles may accept a police report under this subsection that is prepared and transmitted as an electronic record, including electronic signature or signatures, subject to such security procedures as the commissioner may specify and in accordance with the provisions of sections 1-266 to 1-286, inclusive. In any hearing conducted pursuant to the provisions of subsection (g) of this section, it shall not be a ground for objection to the admissibility of a police report that it is an electronic record prepared by electronic means."

Although § 14-227b has been the subject of amendments in 2016 and 2014; see Public Acts 2016, No. 16-126, § 17; Public Acts 2016, No. 16-55, §§ 6 and 7; Public Acts 2014, No. 14-228, § 6; those amendments have no bearing on the merits of the appeal. In the interest of simplicity, we refer to the current revision of § 14-227b throughout this opinion.

[2] Section 14-227b-19 of the Regulations of Connecticut State Agencies provides: "(a) The report filed or transmitted by the arresting officer shall be admissible into evidence at the hearing if it conforms to the requirements of subsection (c) of section 14-227b of the . . . General Statutes.

"(b) The chemical test results in the form of the tapes from a breath analyzer or other chemical testing device submitted contemporaneously with the report shall be admissible into evidence at the hearing if they conform to the requirements of subsection (c) of section 14-227b of the . . . General Statutes.

"(c) An electronic record that contains electronic signatures of persons required to sign in accordance with subsections (a), (b) and (c) of section 14-227b-10 of the Regulations of Connecticut State Agencies shall be admissible at a hearing to the same extent as a report containing written signatures, as provided in subsection (c) of section 14-227b of the . . . General Statutes."

[3] General Statutes § 14-227b (g) provides in relevant part: "If [a person whose license has been suspended pursuant to this section] contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension, except that, with respect to a person whose operator's license or nonresident operating privilege is suspended in accordance with subdivision (2) of subsection (e) of this section, such hearing shall be scheduled not later than thirty days after such person contacts the department. At the request of such person [or] the hearing officer . . . and upon a showing of good cause, the commissioner may grant one or more continu-

ances. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, provided such test was commenced within two hours of the time of operation. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases. Notwithstanding the provisions of subsection (a) of section 52-143, any subpoena summoning a police officer as a witness shall be served not less than seventy-two hours prior to the designated time of the hearing.''

[4] ''The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests. . . . [S]ee General Statutes § 14-227b (c) (The [arresting] police officer shall prepare a report of the incident. . . . The report shall contain such information as prescribed by the Commissioner of Motor Vehicles . . . .).'' (Citation omitted; internal quotation marks omitted.) *Do* v. *Commissioner of Motor Vehicles*, 164 Conn. App. 616, 618 n.1, 138 A.3d 359 (2016).

[5] We refer to the three documents comprising the police report as the exhibit and refer to each document in the exhibit—the A-44 form, the investigation report, and the plaintiff's breath analysis tests—individually when discussing the specific information contained therein.

[6] As we explain more fully hereinafter, we also agree with the commissioner that, contrary to the determination of the trial court, there is no need for the case to be remanded to the hearing officer for an articulation because the hearing officer's findings were sufficient to support the commissioner's decision to suspend the plaintiff's license.

[7] During the horizontal gaze nystagmus test, the plaintiff exhibited in both eyes a ''lack of smooth pursuit,'' ''distinct jerkiness at maximum deviation,'' and an ''onset of jerkiness prior to forty-five degrees . . . .'' During the walk and turn, the plaintiff ''lost her balance, performed no heel to toe, raised her arms for balance, took the incorrect number of steps and turned incorrectly.'' During the one leg stand, the plaintiff lifted her arms for balance, swayed while trying to balance, and put her foot down.

[8] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[9] General Statutes (Supp. 2014) § 14-227a (a) provides in relevant part: ''No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . .''

[10] General Statutes § 14-227b (e) (1) provides: ''Except as provided in subdivision (2) of this subsection, upon receipt of [a] report [that conforms to subsection (c) of this section], the Commissioner of Motor Vehicles may suspend any operator's license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of such person's arrest by the police officer. Any person whose operator's license or nonresident operating privilege has been suspended in accordance with this subdivision shall automatically be entitled to a hearing before the commissioner to be held in accordance with the provisions of chapter 54 and prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice.''

[11] See footnote 3 of this opinion.

[12] The changes that were made to the A-44 form bore the initials "RH," which the plaintiff acknowledges are those of Biggs' supervising officer, Hennessey, who administered the oath to Biggs.

[13] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[14] See footnote 2 of this opinion.

[15] Of course, although a report that complies with General Statutes § 14-227b (c) is admissible, if the report is so confusing and ambiguous that it reasonably cannot be relied on, then it would be improper for a hearing officer to do so. That is not the case here.

---