******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COLIN J. PENCE *v.* COMMISSIONER
OF MOTOR VEHICLES ET AL.
(AC 47595)

Moll, Suarez and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing his administrative appeal from the decision of the defendant Commissioner of Motor Vehicles. In his decision, the commissioner suspended the plaintiff's motor vehicle operator's license following his arrest for operating a motor vehicle while under the influence of intoxicating liquor and required, pursuant to statute (§ 14-227b (i)), as a condition for the restoration of his license, that the plaintiff install an ignition interlock device in a motor vehicle he owned or operated. The plaintiff claimed that the court improperly dismissed his administrative appeal for lack of standing because he had established that he was an indigent driver who did not own a motor vehicle, could not afford a motor vehicle, and had no access to a motor vehicle in which to install an ignition interlock device, and, therefore, there was a possibility that his legally protected interest in a motor vehicle operator's license would be adversely and unequally affected by the ignition interlock device requirement in violation of the equal protection clauses of the United States and Connecticut constitutions. *Held*:

The trial court properly determined that the plaintiff did not have standing to assert his constitutional claim, as the plaintiff failed to establish that he was a member of the group of individuals that he asserted § 14-227b (i) was enacted to discriminate against, namely, indigent drivers who do not own a motor vehicle, who cannot afford a motor vehicle, and who do not have access to a motor vehicle in which to install an ignition interlock device, as is required by § 14-227b (i).

(*One judge dissenting*)

Argued March 26—officially released September 23, 2025

*Procedural History*

Appeal from the decision of the named defendant suspending the plaintiff's motor vehicle operator's license and imposing an ignition interlock device requirement, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Budzik, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed*.

*J. Christopher Llinas*, for the appellant (plaintiff).

*Andrew M. Ammirati*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (named defendant).

*Opinion*

MOLL, J. The plaintiff, Colin J. Pence, appeals from the judgment of the Superior Court rendered in favor of the defendant[1] Commissioner of Motor Vehicles (commissioner) dismissing his administrative appeal from the decision of the commissioner suspending his motor vehicle operator's license for forty-five days and requiring the installation of an ignition interlock device in his motor vehicle for six months pursuant to General Statutes § 14-227b (i).[2] On appeal, the plaintiff argues that the court improperly dismissed his administrative

---

[1] The plaintiff also named as a defendant the Office of the Attorney General.

[2] General Statutes § 14-227b (i) provides in relevant part: "(1) The commissioner shall suspend the operator's license or operating privilege of a person . . . against whom a decision was issued, after a hearing, pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice, for a period of forty-five days. As a condition for the restoration of such operator's license or operating privilege, such person shall be required to install an ignition interlock device on each motor vehicle owned or operated by such person and, upon such restoration, be prohibited from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device . . . .

"(2) (A) A person twenty-one years of age or older at the time of the arrest who submitted to a test and the results of such test indicated that such person had an elevated blood alcohol content, or was found to have been operating a motor vehicle under the influence of intoxicating liquor or any drug, or both based on a report filed pursuant to subsection (d) of this section, shall install and maintain an ignition interlock device for the following periods: (i) For a first suspension under this section, six months . . . ."

Since the events underlying this appeal, the legislature has amended § 14-227b in ways that have no bearing on the merits of the present case. See Public Acts 2024, No. 24-40, § 54; Public Acts 2024, No. 24-137, § 2; Public Acts 2025, No. 25-159, § 61. In the interest of simplicity, we refer to the current revision of the statute.

appeal for lack of standing because he established that he is an indigent driver who does not own a motor vehicle, cannot afford a motor vehicle, and has no access to a motor vehicle in which to install an ignition interlock device, as is required by § 14-227b (i), and, therefore, there is a possibility that his legally protected interest in a motor vehicle operator's license will be adversely and unequally affected by the ignition interlock device requirement. We disagree and, accordingly, affirm the judgment of the Superior Court.

The following procedural history and facts, as recited by the court or as undisputed in the record, are relevant to our resolution of this appeal. On August 13, 2022, at approximately 1:05 a.m., Officer Michael Wilcoxson was dispatched in response to a complaint about a motor vehicle in the middle of the roadway fronting 101 North Plains Industrial Road in Wallingford. After assessing the scene and observing that the plaintiff's motor vehicle had collided with the guardrail on the west side of North Plains Industrial Road, Wilcoxson asked the plaintiff to perform three standardized field sobriety tests, all of which the plaintiff failed. The plaintiff was arrested and transported to the Wallingford Police Department, where he was read his *Miranda* rights[3] and submitted to two Breathalyzer tests in which his blood alcohol content registered as 0.1992 and 0.1942, respectively. As a result, Wilcoxson arrested the plaintiff for, inter alia,[4] operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[5]

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] The plaintiff also was charged with failure to drive on the right side of the road in violation of General Statutes § 14-230 (a) and littering in violation of General Statutes (Rev. to 2021) § 22a-250 (a).

[5] General Statutes § 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating

On August 26, 2022, the commissioner issued a suspension notice to the plaintiff notifying him of a forty-five day suspension of his motor vehicle operator's license, effective September 12, 2022, with a requirement to install and maintain an ignition interlock device for six months. On October 26, 2022, at the plaintiff's request, the commissioner held an administrative license suspension hearing before a hearing officer, pursuant to § 14-227b, to determine whether the plaintiff's motor vehicle operator's license should be suspended and subjected to an ignition interlock device requirement as a condition of reinstatement. At the hearing, several exhibits were admitted and the hearing officer heard testimony from two witnesses, the plaintiff and Attorney Michael Paris.[6] The plaintiff did not contest the four issues that are typically considered during a license suspension hearing, namely, whether (1) the police officer had probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, (2) such person was placed under arrest, (3) such person submitted to a test or analysis, commenced within two hours of the time of operation, that indicated that such person had

liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. . . .''

Since the events underlying this appeal, the legislature has amended § 14-227a in ways that have no bearing on the merits of the present case. See Public Acts 2025, No. 25-110, § 49. In the interest of simplicity, we refer to the current revision of the statute.

[6] Attorney Paris is employed as a public defender in Bridgeport. At the October 26, 2022 hearing, Attorney Paris testified about his experiences with indigent clients who have been convicted under § 14-227a and, as a result, had their motor vehicle operator's licenses suspended and were required to install ignition interlock devices. He explained that he has observed that such individuals "are never able to . . . get their license properly restored and drive legally" and that the requirement of an ignition interlock device "really becomes a lifetime suspension" of their motor vehicle operator's license because they often do not have motor vehicles in which they can install an ignition interlock device. Attorney Paris did not testify about the plaintiff or the facts of the present case.

an elevated blood alcohol content, and (4) such person was operating a motor vehicle. See General Statutes § 14-227b (g) (2); *Do* v. *Commissioner of Motor Vehicles*, 330 Conn. 651, 658–59, 200 A.3d 681 (2019). Instead, the plaintiff raised a constitutional challenge to § 14-227b (i), claiming that its requirement of an ignition interlock device, as applied to him, violates the equal protection clauses of the United States and Connecticut constitutions.

On October 27, 2022, the hearing officer, acting on behalf of the commissioner, found that (1) the police officer had probable cause to arrest the plaintiff for a violation of § 14-227a, (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to a Breathalyzer test and the results indicated a blood alcohol content of 0.08 percent or more, and (4) the plaintiff was operating a motor vehicle.[7] As a result, the hearing officer suspended the plaintiff's motor vehicle operator's license or operating privilege for forty-five days and required the installation of an ignition interlock device for six months. On November 11, 2022, the plaintiff filed a petition for reconsideration, which the commissioner's petition review committee subsequently denied on November 28, 2022.

On January 18, 2023, pursuant to General Statutes § 4-183,[8] the plaintiff appealed to the Superior Court

---

[7] During the administrative hearing, the plaintiff's counsel raised his constitutional claim but acknowledged that he did not expect the hearing officer to declare § 14-227b (i) unconstitutional, explaining that such an expectation would be "unrealistic." He noted, however, that he was raising the issue before the hearing officer in order to create a factual record to support such claim in subsequent appellate proceedings. In the October 27, 2022 decision, the hearing officer did not address the plaintiff's constitutional argument.

[8] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

from the decision of the commissioner. In his petition, the plaintiff argued that "[t]he underlying statute, § 14-227b, is unconstitutional as an 'as applied' equal protection violation, pursuant to the fourteenth amendment to the United States constitution and article first, § 20, of the [constitution of] Connecticut . . . to the extent it authorizes imposition of an [ignition interlock device] requirement, across the board, on all drivers who either fail a chemical test or refuse when offered the opportunity to take a chemical test after their arrest for operating under the influence . . . without regard for whether they own a vehicle, can afford a vehicle, or have access to a vehicle into which they can install an [ignition interlock device]." On March 15, 2023, the commissioner filed an answer. On April 24 and May 15, 2023, the plaintiff and the commissioner, respectively, filed briefs addressing the plaintiff's constitutional claim.[9]

On September 19, 2023, the court, *Budzik, J.*, heard argument on the plaintiff's administrative appeal. During the hearing, the court briefly raised, sua sponte, the issue of whether the plaintiff had standing to raise his constitutional claim, and the plaintiff's counsel briefly addressed that claim. On January 11, 2024, the court issued a memorandum of decision dismissing the plaintiff's appeal for lack of standing.[10] Specifically, the court stated that "the court cannot conclude that [the plaintiff] is, in fact, indigent, or otherwise unable to afford a car on anything other than a temporary basis. Thus, the court concludes that [the plaintiff] is not within the class of persons whose rights he seeks to vindicate and, therefore, [the plaintiff] has no standing to assert his proffered claim of unconstitutionality." In support of

---

[9] On May 30, 2023, the plaintiff filed a reply brief.

[10] The court also concluded that "there is substantial evidence in the record to demonstrate the four elements set forth in . . . § 14-227b (g). See *Buckley* v. *Muzio*, 200 Conn. 1, 6–7, 509 A.2d 489 (1986)."

its conclusion, the court recited the following factual findings: "The record [in the administrative proceedings] establishes that [the plaintiff] is a single, twenty-eight year old, high school graduate, who, up until the time of his arrest, had a full time job as a cook at a local restaurant at which he earned approximately \$450 a week. It is undisputed that [the plaintiff] was in fact able to afford a car up until the night of his arrest. [The plaintiff] lives with his parents, who previously purchased a car for him and paid for the insurance on that car. There is no evidence in the record that [the plaintiff's] parents charged him rent or other expenses. Although [the plaintiff] testified that he was out of work on the day of the October [26, 2022 administrative] hearing and had an injury to his foot, there is no evidence in the record to the effect that [the plaintiff] will be out of work permanently or for any long period of time, that he is disabled from working or otherwise unable to obtain some kind of income, that he lacks savings or other financial resources, or that he does not have access to another car through some other means (his family, for example). While the record establishes that, on the day of the hearing, [the plaintiff] was without a car and was unemployed, there is nothing in the record indicating that circumstance was more than transitory or temporary in nature, or that it was somehow beyond [the plaintiff's] capacity to remedy in some reasonable time period." (Footnotes omitted.)

On January 25, 2024, the plaintiff filed a motion to reargue, arguing that he had established his indigency and, therefore, had standing to assert his constitutional claim. The plaintiff largely relied on the fact that he was deemed eligible for public defender representation in his associated criminal case, which arose out of the same arrest that gave rise to the administrative proceedings underlying the present case. Specifically, the plaintiff argued that "the public defender found [the plaintiff]

to be an indigent defendant and determined him to be eligible for public defender representation. . . . The determination of indigency here is no different than the associated determination of indigency before the public defender. If anything, it is even more apt here, given [the plaintiff's] subsequent injury and unemployment. [The plaintiff] stood before the [commissioner], and now, before this court, as a proper party to the dispute, with a colorable claim and allegation of injury, being unequal treatment under the law, without rational basis, as to the application of . . . § 14-227b (i) and its requirement that all Connecticut drivers install an [ignition interlock device] in a vehicle as [the] sole means of reinstating their license or privilege to drive, without regard to whether they own a vehicle, can afford a vehicle, or have access to a vehicle within which to install an [ignition interlock device]." (Citation omitted.)

On April 5, 2024, the court issued an order granting in part the plaintiff's motion to reargue, wherein it further articulated the basis of its January 11, 2024 decision. Specifically, the court stated that "indigency for purposes of seeking public defender representation is not the claim [the plaintiff] asserts in this matter. As set forth in the motion to reargue, [the plaintiff] asserts that he is 'indigent' such that he is within the class of persons who face the 'additional burden of a potentially infinite suspension' of their [motor vehicle operator's] license because of the requirement for an [ignition] interlock device. . . . As further set forth in the motion to reargue, a common and plain meaning of 'indigent' is '[i]n a general sense, one who is needy and poor, or one who has not sufficient property to furnish him a living nor anyone able to support him to whom he is entitled to look for support. Term commonly used to refer to one's financial ability, and ordinarily indicates

one who is destitute of means of comfortable subsistence so as to be in want.' Black's Law Dictionary (6th Ed. [1990]) p. [773]." (Citation omitted.) The court thereafter concluded that "there was no evidence in the record that [the plaintiff's] financial condition was such that he was facing a 'potentially infinite suspension' because he was 'needy and poor' or lacked 'sufficient property to furnish him a living' or that he lacked 'anyone able to support him to whom he is entitled to look for support' or that [the plaintiff] was 'destitute of means of comfortable subsistence.' Instead, the court concludes that the record demonstrates that [the plaintiff] was well able to support himself up until the evening of his car accident resulting from his own intoxication (a fact that [the plaintiff] does not appear to dispute), and that [the plaintiff's] financial condition on the day of the hearing [before the commissioner] was nothing more than temporary. There is no evidence in the record supporting the conclusion that [the plaintiff's] financial condition on the day of the hearing was permanent, or likely to be of such long duration that he faced an 'infinite license suspension.' " This appeal followed.

We begin by setting forth the applicable standard of review and legal principles that are relevant to our resolution of the plaintiff's claim. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or

questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Mata* v. *Commissioner of Motor Vehicles*, 221 Conn. App. 25, 34–35, 299 A.3d 1262 (2023).

"The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *State* v. *Bradley*, 341 Conn. 72, 79, 266 A.3d 823 (2021).

"Furthermore, [t]he scope of review of a trial court's factual decisions related to the issue of standing on appeal is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Moncho*, 203 Conn. App. 28, 41–42, 247 A.3d 161, cert. denied, 336 Conn. 935, 248 A.3d 708 (2021).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction

of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action . . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring [an action] or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: *first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in* [*the subject matter of the challenged action*], *as distinguished from a general interest, such as is the concern of all members of the community as a whole.* Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . .

"This court has explained that the two prongs of the standing analysis are distinct and, thus, cannot be conflated. . . . *When a* [*party asserting standing in an action*] *cannot demonstrate that he has a specific, personal and legal interest in the subject matter of the challenged action, a court need not decide whether his interest has been specially and injuriously affected.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Bradley*, supra, 341 Conn. 79–81.

"Only members of a class whose constitutional rights are endangered by a statute may ask to have it declared unconstitutional. . . . Courts are instituted to give relief to parties whose rights have been invaded, and

to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress.'' (Internal quotation marks omitted.) Id., 84.

With these legal principles in mind, we turn to the merits of the plaintiff's claim on appeal. The plaintiff challenges the constitutionality of § 14-227b (i), which requires the installation of an ignition interlock device as a condition for the restoration of a motor vehicle operator's license, specifically arguing that such provision violates his right to equal protection under both the United States and Connecticut constitutions. The plaintiff claims that he has standing to assert this claim in his individual capacity[11] because "he is an indigent driver who doesn't own a vehicle, cannot afford a vehicle, and has no access to a vehicle in which to install an [ignition interlock device], as he is required to do by . . . § 14-227b (i), and that there is a possibility that his legally protected interest in a [motor vehicle operator's] license will be adversely and unequally affected by the [ignition interlock device] requirement of § 14-227b (i) as the sole means by which he can restore his license." We disagree.

The plaintiff lacks standing to raise an equal protection claim relating to § 14-227b (i) because he has not successfully demonstrated "a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole." (Internal quotation marks omitted.) *State* v. *Bradley*, supra, 341 Conn. 80. As we noted earlier in this opinion, the court found that, at the time of the

---

[11] We note that the plaintiff does not claim that he was authorized by statute to bring a constitutional challenge to § 14-227b (i) or that he has third-party standing to bring the challenge in a representational capacity on behalf of others. See *State* v. *Bradley*, supra, 341 Conn. 81.

October 26, 2022 administrative hearing, the plaintiff did not own a car and was out of work due to an injury to his foot. More importantly, however, the plaintiff failed to demonstrate that he was out of work permanently or for a prolonged period of time, or otherwise unable to support himself financially such that he could not afford a motor vehicle. As the court noted, "there is no evidence in the record to the effect that [the plaintiff] will be out of work permanently or for any long period of time, that he is disabled from working or otherwise unable to obtain some kind of income, [or] that he lacks savings or other financial resources . . . ." Rather, the evidence that the plaintiff obtained a high school degree and, at the time of his arrest, was employed by a local restaurant, demonstrated that he was capable of earning an income. Also relevant is the court's finding that the plaintiff lives in his parents' home, and no evidence was provided to suggest that he is responsible for any living expenses, including rent or groceries. We cannot conclude, on the basis of these factual findings, that the plaintiff established that he is an indigent driver who cannot afford a motor vehicle.

Moreover, the plaintiff failed to present evidence demonstrating that he is an indigent driver who has no access to a motor vehicle in which to install an ignition interlock device. Rather, the evidence presented by the plaintiff suggested that he did, in fact, have the means to access a vehicle, as the vehicle that he drove prior to his arrest on August 13, 2022, was purchased for him by his parents. His parents also paid the insurance for that motor vehicle. There was no evidence presented indicating that he would not have these benefits, or similar accommodations, provided to him going forward.

The plaintiff argues that the determination of his indigency, pursuant to General Statutes § 51-297 (f) (1),[12]

___

[12] General Statutes § 51-297 (f) (1) provides in relevant part: "As used in this chapter, 'indigent defendant' means (A) a person who is formally charged

in his associated criminal case demonstrates that he is a member of the defined class that is allegedly aggrieved by the ignition interlock device requirement set forth in § 14-227b (i). We are unpersuaded. In his appellate brief and during oral argument before this court, the plaintiff explicitly stated that the aggrieved class of which he purports to be a member is not merely indigent drivers but "indigent driver[s] *who* [*do not*] *own a vehicle, cannot afford a vehicle, and* [*have*] *no access to a vehicle into which to install an* [*ignition interlock device*], as [they are] required to do by . . . § 14-227b (i) . . . ." (Emphasis added.) Thus, the controlling question is not merely whether the plaintiff is indigent, but rather whether the plaintiff is a member of the aforementioned class.[13] For the reasons we have stated, the plaintiff has not demonstrated that he is an indigent driver who cannot afford a vehicle and has no access to a vehicle in which to install an ignition interlock device.[14]

Additionally, while the plaintiff correctly notes that "[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally pro-

with the commission of a crime punishable by imprisonment and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation . . . ."

Since the events underlying this appeal, the legislature has amended § 51-297 (f) in ways that have no bearing on the merits of the present case. See Public Acts 2023, No. 23-204, § 201. In the interest of simplicity, we refer to the current revision of the statute.

[13] In the plaintiff's appellate brief, he asks this court to take judicial notice of his attorney's pro bono representation of him in the present case. Setting aside that a finding of indigency, alone, is not dispositive, we decline the plaintiff's request because such evidence was not before the court when it determined that the plaintiff lacked standing. See *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 863–64, 231 A.3d 182 (2020) (declining to consider evidence on appeal that was not before trial court).

[14] We recognize that the plaintiff asserts that he does not currently own a vehicle. This fact has no bearing on whether the plaintiff has standing to pursue his constitutional claim, as he has not demonstrated that he cannot afford a vehicle or that he does not have access to a vehicle.

tected interest . . . has been adversely affected"; (internal quotation marks omitted) *State* v. *Bradley*, supra, 341 Conn. 80; this notion goes to the second prong of the twofold test set forth in *Bradley*. Thus, insofar as the plaintiff suggests that the court improperly failed to recognize this principle when it determined that the plaintiff was not a member of the class that he claims is aggrieved by the ignition interlock device requirement set forth in § 14-227b (i), namely, indigent drivers who do not own a motor vehicle, cannot afford a motor vehicle, and do not have access to a motor vehicle in which to install an ignition interlock device, we disagree.

Simply stated, on the basis of the record before us,[15] the plaintiff has not established that he is a "member of the group" of individuals "that he asserts the statute was enacted to discriminate against," namely, indigent drivers who do not own a vehicle, cannot afford a vehicle, and do not have access to a vehicle in which to install an ignition interlock device as is required by § 14-227b (i). *State* v. *Bradley*, supra, 341 Conn. 86. Because the plaintiff has not satisfied the first part of the twofold test set forth in *Bradley*, we need not decide whether the plaintiff has "successfully establish[ed] that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) Id., 80–81.

In sum, we conclude that the court properly determined that the plaintiff did not have standing to assert his constitutional claim.

The judgment is affirmed.

In this opinion SUAREZ, J., concurred.

---

[15] The dissent states that, at a minimum, the plaintiff was entitled to an evidentiary hearing on the standing issue. We note that the plaintiff does not claim on appeal that the court committed error in failing to conduct an evidentiary hearing; rather, he maintains in his appellate brief that he established standing on the basis of the existing record.